UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                                          5:16-CR-0383 (GTS)

KERRY SMITH,

                Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

HON. GRANT C. JAQUITH                                       LISA M. FLETCHER, ESQ.
United States Attorney for the N.D.N.Y.                     Assistant United States Attorney
  Counsel for the Government
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198

ROBERTSON LAW OFFICE                                        THOMAS M. ROBERTSON, ESQ.
  Counsel for Defendant
333 East Onondaga Street
Syracuse, NY 13202

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      To address the Second Circuit's Mandate issued on August 30, 2019, in the appeal of Kerry Smith ("Defendant") from the Court's Judgment of August 14, 2017, in the above-captioned criminal proceeding, the Court has asked the United States Probation and Pretrial Services Office for the Northern District of New York ("Probation Office") to supplement the record with respect to the scope and rules of the Computer and Internet Monitoring Program (which has been attached to this Decision and Order), and has asked the parties to file briefs regarding their position(s) on Special Condition of Supervision Number 6 ("Special Condition #

6") of the Court's Judgment (which they have done). After carefully considering the supplemented record, the Court retains all of Special Condition # 6 and provides the following explanation of its reasoning so as to permit appellate review.

In accordance with 18 U.S.C. § 3583(d), the United States Sentencing Guidelines provide that a district court may impose conditions of supervised release to the extent that such conditions (1) are reasonably related to the following (A) the nature and circumstances of the offense and the history and characteristics of the defendant, (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct, (C) the need to protect the public from further crimes of the defendant, and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, and (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission. U.S. Sentencing Guidelines § 5D1.3(b). With respect to the reasonably related requirement, "a condition may be imposed if it is reasonably related to any one or more of the specified factors." *United States v. Abrar*, 58 F.3d 43, 46 (2d Cir. 1995); *accord*, *United States v. McLaurin*, 731 F.3d 258, 262 (2d Cir. 2013). Conditions of supervised release may restrict liberty to the extent reasonably necessary to achieve the above-stated purposes. *United States v. Lifshitz*, 369 F.3d 173, 188 (2d Cir. 2004); *United States v. Germosen*, 139 F.3d 120, 131 (2d Cir. 1998). A district court retains wide latitude in imposing conditions of supervised release, and the Second Circuit "therefore review[s] a decision to impose a condition for abuse of discretion." *United States v. MacMillen*, 544 F.3d 71, 74 (2d Cir. 2008); *cf. United States v. Dupes*, 513 F.3d 338, 342-43 (2d Cir. 2008).

Special Condition # 6 requires Defendant to participate in the Probation Office's Computer and Internet Monitoring Program ("CIMP") in order to use and/or possess any computer equipment, internet-capable devices, and data-storage devices. (Dkt. No. 35, at 5.) *See also* CIMP Nos. 2, 4, 5, 7, 10. This condition comports with a Sentencing Commission Policy Statement, which provides in pertinent part that, if the offense of conviction is a sex offense, a condition limiting the use of a computer or an interactive computer service is recommended in cases in which the defendant used such items. U.S. Sentencing Guidelines § 5D1.3(d)(7)(B). Because Defendant's offense of conviction is a sex offense that she committed through the use of a computer (i.e., a cellular phone), Special Condition # 6 is consistent with this Policy Statement issued by the Sentencing Commission.

The Court finds, based on the following facts gleaned from the Presentence Investigation Report, that Special Condition # 6 is reasonably related to the nature and circumstances of the offense, as well as the history and characteristics of Defendant.

Defendant used her cellular phone (which is a computer, internet-capable device, and data-storage device) to record herself sexually abusing her 10-year-old ▮▮▮▮▮ for the purpose of distributing those produced images to Jason Kopp. *See* 18 U.S.C. § 1030(e)(1) (defining the term "computer"). Defendant had met Kopp through an internet-posted advertisement on Craigslist. Kopp openly admitted that he was sexually interested in young girls. The two had sexual contact with one another and engaged in texting communications. At Kopp's request, Defendant sexually abused her ▮▮▮▮▮, produced images of that sexual abuse, and distributed those images to Kopp by computer (i.e., by a text messaging application on her cellular phone). She also showed her 10-year-old ▮▮▮▮▮ pictures of Kopp's penis, which Kopp had sent to

3

Defendant by way of text messaging.  Kopp also texted Defendant pornographic images of an infant and a four-year-old girl, which had been produced by another woman who was involved with Kopp.  Defendant and Kopp engaged in text conversations about Defendant engaging in sexual activity with Kopp's one-year-old son.  (Defendant denied actually engaging in this activity, noting the most physical contact she had with the boy's genitals was when she cleaned him while changing his diaper.)  Defendant also distributed the sexually explicit images that she had taken of her ▇▇▇▇ to Floyd Wood by way of her cellular phone's text messaging application.  Wood was a member of Defendant's swingers' group.  Defendant and her husband met other swingers by placing ads on internet websites, including on AdultFriendFinder.com, which is an adult sex and swinger social network.  Defendant described how she and her husband attended five to six parties per month and how sometimes they brought their children, at which times the adults engaged in sex in a locked room and the children did not participate.  When Wood asked her for pornographic pictures of her minor ▇▇▇▇, Defendant requested the images back from Kopp so she could send them to Wood.  After Defendant's arrest, law enforcement officers assumed her identity and made plans to meet Wood at a hotel for the purpose of engaging in sexual activity with Defendant and her then 12-year-old ▇▇▇▇.  Wood was arrested at the hotel with a duffle bag containing a variety of items that he planned to use on Defendant and her minor ▇▇▇▇.  According to Wood's statement to law enforcement, he used the internet to communicate with other people about different fantasies, including sexual acts with children.  He considered himself a pedophile, who was interested in both little boys and little girls.

    The information contained in the Presentence Investigation Report demonstrates that the

internet facilitated Defendant's offense by giving her a platform on which to meet like-minded people and that, after she commenced a sexual relationship with one man, she used a computer (i.e., her cellular phone) to produce and distribute sexually explicit images of her ▇▇▇▇ to that man. She then distributed the same images of her ▇▇▇▇ to a second man after meeting him on the internet and commencing a sexual relationship with him. Accordingly, the Court finds that Special Condition # 6 is reasonably related to the nature and circumstances of Defendant's offense and is necessary to (1) monitor Defendant's computer use and her communications on the internet to effectively promote her rehabilitation, (2) deter her from committing similar criminal conduct, and (3) protect children who may be victimized by Defendant or by someone she meets on the internet.

     According to her husband, Defendant had been with, and had communicated with, people who were interested in children. He believed an undiagnosed mental illness allowed her to be easily manipulated by Jason Kopp and that she was keeping secrets from him (her husband) because she was crossing the boundaries of their sexual lifestyle. Defendant's mother also described her ▇▇▇▇ as someone who was easily influenced, while also blaming her son-in-law and their sexual lifestyle. Based on Defendant's sexual lifestyle, her relationships with men she had met on the internet who were openly interested in children, and the information provided by her husband and mother, the Court finds that the computer and internet monitoring condition is reasonably related to Defendant's history and characteristics.

     The Court has reviewed the conditions and rules of CIMP, which were approved by the Board of Judges for the Northern District of New York in May of 2016. These conditions and rules do not unlawfully delegate the Court's judicial authority to the Probation Office. It is well

established that a district court may not delegate to the Probation Office decisionmaking authority that would make a defendant's liberty itself contingent on a probation officer's exercise of discretion.  Moreover, the Second Circuit will not disturb a special condition mandated and authorized by a district court when it leaves certain details of the condition to the discretion of a probation office.  Here, the Court is clearly and unambiguously authorizing a restriction on Defendant's liberty and authorizing the Probation Office to administer and oversee the rules and conditions of CIMP.  *United States v. Degroate*, 940 F.3d 167, 177 (2d Cir. 2019); *United States v. Young*, 910 F.3d 665, 671 (2d Cir. 2018); *United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015).  The condition specifically directs Defendant to comply with the rules of CIMP, puts her on notice that the Probation Office may use software to monitor her devices, and directs her to permit the Probation Office to conduct periodic, unannounced examinations of her devices.  Additionally, the condition allows Defendant to seek authorization from the Court or the Probation Office to use non-monitored internet-capable devices.  Finally, this condition is least restrictive because it does not ban Defendant from using computers or the internet if she agrees to participate in the monitoring program.

It is important to note that the Second Circuit has found that computer monitoring, as implemented by a probation office, is not unreasonable or an excessive deprivation of liberty, after considering a defendant's offense of conviction and the interests of furthering specific deterrence, public protection, and rehabilitation.  In *United States v. Browder*, 866 F.3d 504 (2d Cir. 2017), the Circuit upheld such a condition and explained as follows:

> Browder's principal contention on appeal is, '[i]n short,' that 'the computer monitoring system that the Probation Office sought to implement involved a greater deprivation of liberty than is reasonably

necessary for the purposes set forth in section[s] 3553(a)(2)(b), (a)(2)(C), and (a)(2)(D) [of Title 18 of the United States Code].' Browder's principal argument–which seeks to apply the requirements governing the imposition of sentence by the District Court to the execution of that sentence by the Probation Office–is thus fundamentally confused. "[T]he extensive 'supervision mission' of federal probation officers includes 'execut[ing] the sentence,' but not imposing it.

   In light of the foregoing, we construe the computer monitoring condition as Browder himself does–that is, as having sentenced him to whatever computer monitoring policy was used by the Western District's Probation Office at his release–and consider whether that sentence, as effectuated in the Probation Office policy, was unreasonable or an 'abuse of discretion.' We conclude it was not.

*United States v. Browder*, 866 F.3d 504, 509-10 (2d Cir. 2017) (internal quotation marks and footnotes omitted).  In *United States v. Savastio*, 777 F. App'x 4 (2d Cir. 2019), the Second Circuit upheld the identical monitoring condition at issue here, stating as follows:

   In challenging the Internet Conditions, Savastio argues that 'the terms the court below imposed would ban Mr. Savastio from . . . using the internet (likely including email) for the remainder of his life.' That is incorrect. The district court merely imposed conditions on Savastio's Internet use, namely, that he either 'participate in the Computer and Internet Monitoring Program (CIMP)' or that he receive authorization from the district court or the Probation Office in order to access the Internet. The limitation to one Internet-capable device was also imposed in order to 'facilitate the U.S. Probation Office's ability to effectively monitor [Savastio's] internet related activities.' In light of Savastio's history of accessing child pornography over the Internet and his prior violations of supervised release, we conclude that these conditions were reasonably related to, *inter alia*, 'the history and characteristics of the defendant.' U.S.S.G. § 5D1.3(b).

   Properly characterized, the Internet Conditions reflect a computer monitoring requirement that we have previously approved under similar circumstances in *United States v. Browder*, 866 F.3d 504 (2d Cir. 2017). In that case, we upheld a special condition requiring that a child pornography defendant 'shall participate in the Computer/Internet Monitoring Program administered by the U.S. Probation Office,' *id*. at 509, finding that condition 'reasonably related' to the nature and circumstances of the offense and Browder's history and characteristics,' *id*. at 512. If a child pornography defendant can be required to participate in a

> computer monitoring program, it follows a fortiori that his Internet access can be conditioned on such participation. For similar reasons, this case does not fall within the ambit of *United States v. Sofsky*, 287 F.3d 122 (2d Cir. 2002), or *United States v. Eaglin*, 913 F.3d 88 (2d Cir. 2019), both of which rejected special conditions that altogether prohibited the defendant from accessing the Internet without the specific approval of his probation officer. *See Sofsky*, 287 F.3d at 124; *Eaglin*, 913 F.3d at 94.

*United States v. Savastio*, 777 F. App'x 4, 6-7 (2d Cir. 2019).

Finally, should Defendant's circumstances change or should technology change before Defendant is released from prison, the Court can modify, reduce, or enlarge the conditions at any time prior to the expiration of her supervised release.

**ACCORDINGLY**, it is

**ORDERED** that Special Condition # 6 of the Court's Judgment of August 14, 2017, shall be retained in its entirety and re-imposed as it was originally.

Dated: November 21, 2019
Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge